# STATE OF MICHIGAN

# COURT OF APPEALS

BRENDA LOPEZ,

Plaintiff-Appellant,

v

DONNA ADDISON and SHAMROCK CAB
COMPANY,

Defendants-Appellees.

UNPUBLISHED
February 2, 2016

No. 323811
Macomb Circuit Court
LC No. 2013-002043-NI

Before: STEPHENS, P.J., and HOEKSTRA and SERVITTO, JJ.

PER CURIAM.

Plaintiff appeals as of right an order granting summary disposition in favor of defendants, Donna Addison and Shamrock Cab Company, in this no-fault action. We affirm.

This case arises out of an automobile accident that occurred on November 8, 2012. Plaintiff was riding as a passenger in defendant Shamrock Cab Company's vehicle, which was driven by defendant Addison. Defendant Addison, while changing lanes, struck the rear end of another vehicle. Plaintiff experienced pain in her neck and head, and was transported to the hospital.

Prior to the 2012 accident, plaintiff was also involved in another vehicle accident in 2011. As a result of the 2011 accident, plaintiff experienced continual neck and back pain, in addition to discomfort in her extremities. Plaintiff was unable to perform her job as a certified nursing assistant after the 2011 accident, and sought treatment with various doctors and therapists. Plaintiff was unable to care for herself, and thus was assisted by her daughter.

As a result of the 2012 accident, plaintiff brought a negligence action against defendants. However, the trial court granted defendants' motion for summary disposition, holding that there was no genuine issue of material fact whether plaintiff suffered serious impairment of body function, as plaintiff failed to show how her pre-accident life was different from her post-accident life.

Plaintiff argues on appeal that she clearly suffered serious impairment of a body function, and specifically, that her injuries had affected her general ability to lead her normal life. We disagree.

-1-

This Court "reviews de novo decisions on motions for summary disposition." *Sherry v East Suburban Football League*, 292 Mich App 23, 26; 807 NW2d 859 (2011). Summary disposition under MCR 2.116(C)(10) is appropriate "when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* In reviewing the lower court's decision, this Court must "consider the affidavits, pleadings, depositions, admissions, and other documentary evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id.* at 27 (citation and quotation marks omitted).

Generally, under Michigan's no-fault act, tort liability is precluded between motor vehicle operators involved in a motor vehicle accident. MCL 500.3135(3). However, a person may pursue a tort claim "if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." MCL 500.3135(1). To determine whether a person has suffered a "serious impairment of body function," the Michigan Supreme Court has promulgated a three part test requiring: "(1) an objectively manifested impairment (2) of an important body function that (3) affects the person's general ability to lead his or her normal life." *McCormick v Carrier*, 487 Mich 180, 195; 795 NW2d 517 (2010).

At particular issue in this case is prong three—whether plaintiff's injuries have affected her general ability to lead her normal life. The Michigan Supreme Court has instructed that "the plain text of the statute . . . demonstrate[s] that the common understanding of to 'affect the person's ability to lead his or her normal life' is to have an influence on some of the person's capacity to live in his or her normal manner of living . . . . Determining the effect or influence that the impairment has had on a plaintiff's ability to lead a normal life necessarily requires a comparison of the plaintiff's life before and after the incident." *Id.* at 202. Furthermore, "there is no quantitative minimum as to the percentage of a person's normal manner of living that must be affected." *Id.* at 203. Additionally, "the statute merely requires that a person's general ability to lead his or her normal life has been *affected*, not destroyed." *Id.* at 202 (emphasis in original). "[C]ourts should consider not only whether the impairment has led the person to completely cease a pre-incident activity or lifestyle element, but also whether, although a person is able to lead his or her pre-incident normal life, the person's general ability to do so was nonetheless affected." *Id.* at 202.

Plaintiff failed to present evidence creating a genuine issue of material fact that her alleged injuries affected her general ability to lead her normal life. Prior to the November 8, 2012 accident, plaintiff lived a largely inactive lifestyle as a result of her September 18, 2011 accident. Plaintiff did not work at Precise Healthcare as a certified nursing assistant since her September 18, 2011 accident. After the September 18, 2011 accident, plaintiff required the help of her daughter to do basic chores and errands. When asked "what did [your daughter] do for you," plaintiff responded, "[c]ook, clean, errands, wash clothes, take my kids to practice, her brothers and sisters, take them to practice, took them to school, did everything." After the November 8, 2012 accident, when asked how her daughter helped out, plaintiff similarly responded, "[w]ash, clean, take me to get my hair done, my nails done, she helps me get dressed, she help[s] me in and out of the shower, [and] she help[s] me to the bathroom." Before the September 18, 2011 accident, plaintiff was actively involved in her community. She provided catering services, cooked for block parties, cooked for her children's sports teams, and sold handmade baskets from her home as well. However, since the September 18, 2011 accident, plaintiff was unable to do any of these community activities. Plaintiff's post-September 18, 2011

life is essentially the same as her post-November 8, 2012 life. Plaintiff's activities before November 8, 2012, and after November 8, 2012, are the same; she has been unable to work and has not engaged in the community like she did previously. Moreover, plaintiff has presented no further evidence of any other activities that may have been affected by her alleged injuries.

Plaintiff does argue that she was prepared to go back to work shortly before the November 8, 2012 accident, the implication being that plaintiff's "normal life" included the ability to presently and actively work, and that defendants' negligence on November 8, 2012, cut short this aspect of her life. However, the evidence supporting this argument is sparse. During plaintiff's deposition, she was asked whether after the September 18, 2011 accident she "thought maybe [she] could do her job." Plaintiff responded, "I was calling my agency to see if I could come back to work, and she said yes. Once I was done with all of that, then she would be glad to have me back when I spoke to her." We conclude that this statement by itself does not raise a genuine issue of material fact as to whether plaintiff was able to work immediately prior to the November 8, 2012 accident. At best, plaintiff's statements indicate that she called her employer to determine whether she could come back to work at some unspecified future time. Accordingly, the trial court did not err in granting defendants' motion for summary disposition based on its ruling that there was no genuine issue of material fact that plaintiff had suffered a serious impairment of body function.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Joel P. Hoekstra
/s/ Deborah A. Servitto